IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 09-cv-01007-RBJ-MJW

CELLPORT SYSTEMS, INC.,

    Plaintiff,

v.

PEIKER ACUSTIC GMBH & CO. KG,

    Defendant.

## ORDER

This order addresses "Defendant Peiker's Motion for Further Ruling on Contract Interpretation as Matter of Law" [#202].  It has been fully briefed, and neither party has requested oral argument.

**Facts**

The Court set forth the basic facts in its order dated February 6, 2012 [#201].  Suffice it to say that this dispute concerns Cellport's technology that enables mobile phones to be connected to the audio, power and antenna systems of vehicles on a hands-free basis.  Peiker develops and sells technology for the hands-free use of mobile phones.  In 2004 Cellport and Peiker entered into a "License Agreement" (the "Agreement") whereunder Cellport permitted Peiker to incorporate certain Cellport proprietary technology into "Licensed Products" in exchange for royalty payments.  Cellport claims that Peiker has not accurately accounted for and paid royalties due on sales of Licensed Products.  Peiker has counterclaimed for a declaration of noninfringement of the Cellport patents.

In its previous order the Court addressed a dispute concerning the scope of the Agreement. Peiker argued that Cellport can only claim royalties on products that practice Cellport's patents. Cellport argued that it is entitled to royalties on the sale of "Licensed Products," and that infringement analysis is not necessary. The Court held that if a product falls within the definition of the term "Universal Mobile Connectivity Product" in section 1.17 of the Agreement, or if it is substantially similar to one of the products identified section 3.5 of the Agreement, then it is rebuttably presumed to use Cellport's patented technology and to be a Licensed Product. However, Peiker may rebut the presumption by proving that a product does not use Cellport's patented technology. *Id.* at 11-12.

Peiker then filed another motion seeking interpretation of disputed terms in the Agreement [#202]. This motion indicates (erroneously) that Cellport's European patent has been invalidated, and therefore, because only United States patents remain, Cellport's right to royalties are limited to products sold, distributed or delivered within the United States.

**Conclusions**

In response to the motion Cellport notes that the invalidation of the European patent is not final, because an appeal is pending. Cellport also suggests that Peiker has been playing tactical games and should not be permitted to introduce this new argument now. I do not address those arguments. One must remember that this is fundamentally a contract case. To resolve this dispute I turn once again to the terms of the Agreement and conclude that its plain language resolves the new dispute.

The parties agreed that royalties would be paid on the sale, distribution of Licensed Products in the Licensed Territory. Agreement ¶3.1. The Licensed Territory, with one

exception, is the entire world. *Id.* ¶1.10. The exception is that the Licensed Territory for "Uniphones only" is the United States until a certain European patent is granted. *Id.* However, Uniphones were never manufactured and are not at issue in this case. Peiker argues that the exception nevertheless is a clue to the parties' intent that only the European patent extended the licensed territory beyond the United States. The Court need not try to find intent lurking in a clue when the plain language of the Agreement provides the answer. If anything, the fact that the Agreement tied the licensed territory to the United States for uniphones only emphasizes that the licensed territory for other Licensed Products was intended to be, as the language states, the world.

As Peiker indicates, section 3.1 of the Agreement provides that royalties are "in consideration for the Licensee's rights under the several patents included in Licensed Patents." However, the Licensee's rights under the patents are the rights created by the Agreement, including its territorial reach. I agree with Peiker that section 3.1, consistent with section 8.1, ties the royalty obligation to the continued existence of at least one valid patent. However, section 3.1's royalty obligation continues, "without diminution," so long as at least one valid patent remains in effect. That is consistent with the world wide reach of the Agreement, not a contraction of it.

Nor is this conclusion inconsistent with the Court's prior order that permitted Peiker to rebut the presumption that a product is a Licensed Product through its counterclaim of non-infringement. The order indicated that Peiker may choose "to attempt to rebut the presumption by presenting evidence that a given product does not in fact use any technology covered by a Licensed Patent and does not infringe a Licensed Patent." February 6, 2012 Order [#201] at 12. The key is the phrase "use any technology covered by a Licensed Patent." If Peiker can prove

that a product does not use Cellport's patented technology, then it would not infringe Cellport's patents, nor would royalties be required. It does not follow that the converse is true. Even if a product does not infringe a patent because of the territorial reach of a United States patent, the sale, distribution or delivery of a product that uses Cellport's patented technology anywhere in the world generates royalties, not as a matter of patent law but as a matter of contract law.

This conclusion is consistent with other terms of the Agreement. For example, the recitals emphasize that the Agreement is intended to make Cellport's technology, as described in the Licensed Patents, available to Peiker. Section 3.5 of the Agreement provides that the manufacture, sale, distribution or delivery of "any" product that is substantially similar to the three identified products would generate royalties. The parties could have negotiated a contract that more precisely and clearly defined its limits and the parties' intentions. However, the Court interprets the Agreement as written as requiring the payment of royalties on any sale of products utilizing Cellport's patented technology, wherever the products were made, sold or used, so long as any Licensed patent remains in effect.

**Order**

Motion #202 is granted to the extent that, as requested, the Court has provided a further ruling on contract interpretation as a matter of law. However, the Court interprets the contract consistent with Cellport's position regarding the territorial reach of the Agreement.

DATED this 6th day of July, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge