IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No.  09-cv-01007-RBJ-MJW

CELLPORT SYSTEMS, INC.,

     Plaintiff,

v.

PEIKER ACUSTIC GMBH & CO. KG,

     Defendant.

---

# ORDER

---

The parties ask the Court to determine the amount of attorney's fees and costs that Peiker must pay Cellport.  Peiker does not challenge the hourly rates charged by Cellport's attorneys, nor does it dispute that the time recorded was reasonable for the work done.  The dispute is whether all of the work done was necessary or reasonable in light of the result obtained and an opportunity Cellport had as early as May 2011 to settle for approximately what it ultimately recovered.  For the reasons discussed in this order, the Court awards $1,340,235.55 in fees and costs and directs that the final judgment be amended to reflect that award.

## BACKGROUND

This case arises from a License Agreement into which the parties entered as of October 1, 2004.  Cellport has patents concerning systems for the use of mobile telephones in vehicles.  It granted Peiker a license to use its patented technology in Peiker products in exchange for royalties on terms spelled out in the License Agreement.  The parties' disagreement as to

whether Peiker breached the agreement and/or infringed Cellport's patents spawned eight years of hotly contested litigation.

To recall just a few milestones:

- The case was filed in state court in Boulder, Colorado on March 9, 2009 and was removed to federal court on April 30, 2009.

- On May 25, 2011 the parties participated in mediation with former state district judge Murray Richtel of the Judicial Arbiter Group in Denver.  They did not reach a settlement, but Peiker made a substantial settlement offer that is relevant to the current issue, as I will discuss later.

- On February 6, 2012 this Court resolved disputes between the parties concerning interpretation of certain key terms of the License Agreement.  ECF No. 201.  Without getting into details, the Court concluded that the Agreement created presumptions that Peiker products with certain characteristics were covered by the Agreement, but that Peiker could rebut the presumptions if it could show that the product did not use technology covered by a Cellport patent.  *Id.* at 5-11.  The Court also interpreted various terms in the relevant patents pursuant to a Markman hearing that had been conducted earlier.  *Id.* at 15-17.

- The case was tried to the Court September 20-21, 24-25, and 27-29, 2012 with final arguments given on November 29, 2012.

- This Court issued its findings, conclusions and judgment on January 2, 2013.  ECF No. 259.  In that order the Court addressed Cellport's claims with respect to seven Peiker products.  It concluded that Cellport was entitled to royalties as to two of those products

and awarded damages, including prejudgment interest, in the amount of $613,443.  *Id.* at
44.

- Although Cellport received a money judgment, it was for far less than Cellport sought.
  Cellport appealed.  It challenged this Court's rulings on the five products as to which
  Peiker prevailed, its determination of the appropriate rate of prejudgment interest, and its
  determination that neither party prevailed for purposes of a contractual award of
  attorney's fees.  Peiker filed a conditional cross-appeal.  ECF Nos. 262 and 265.

- The Court of Appeals affirmed in part, reversed in part, and remanded for further
  proceedings.  *Cellport Systems, Inc. v. Peiker Acustic GMBH & Co., KG,* 762 F.3d 1016
  (10th Cir. 2014).  The court disagreed that the License Agreement created only rebuttable
  presumptions and found that, for the most part, the disputes must be resolved under the
  terms of the contract, not on whether the products infringed Cellport's patents.  *See id.* at
  1021-23.  The court noted that Peiker conceded that the Agreement covered two of the
  five remaining disputed products (CKII/CIB's sold to Volkswagen and BMW), but that
  the district court did not award royalties due to its finding that the products did not
  infringe a Cellport patent.  The court therefore remanded with directions to determine the
  royalties due on the CKII/CIB products.  *Id.* at 1023.  The court also directed this Court
  to consider further whether royalties were due on the BT-PSC and CKVI products, but it
  affirmed this ruling for Peiker as to the BMW SIAB product.  *Id.* at 1023-28.  The court
  affirmed the determination of the prejudgment interest rate and directed this Court to
  reconsider the prevailing party/attorney's fees issue "given the new terrain in the case."
  *Id.* at 1029.

- On remand this Court addressed and resolved a new dispute concerning the date from which prejudgment interest should run.  ECF No. 301.  It determined that royalties are owed on the CKVI product but not on the BT-PSC.  ECF No. 305.  And it determined that Cellport was the prevailing party and is entitled under the License Agreement to an award of its reasonable attorney's fees.  ECF No. 320.  In the latter order the Court urged the parties to attempt to reach an agreement on the amount of the fees to be awarded.  *Id.* at 2-4.

- The parties did not agree on the amount of fees to be awarded, but they did jointly submit a stipulation that resolved several matters.  ECF No. 325.  They stipulated that Cellport had incurred $2,501,607.79 in attorney's fees and costs from May 8, 2008 (before the lawsuit was filed) through November 30, 2016, and broke that figure down according to various stages of the case.  *Id.* at ¶2 and their Exhibit A, ECF No. 325-1.  They stipulated to the corresponding amounts incurred by Peiker.  *Id.* at ¶4.  They informed the Court that they would provide the itemized billings supporting these numbers at the hearing scheduled for December 13, 2016 (although at the hearing the attorneys for both sides acknowledged that they had not attempted to evaluate or to make an argument based on individual line items due to the voluminous nature of the billing sheets).  *Id.* at ¶¶3, 5.  Peiker stipulated that it would not challenge either the reasonableness of the hourly rates charged by Cellport's attorney's or the amount of time recorded for the work Cellport asked them to perform.  *Id.* at ¶¶6, 8.  Finally, they provided as Exhibit B a chart that showed as to each of the seven disputed Peiker products the total amounts of royalty damages and interest claimed by Cellport versus the total amount ultimately awarded to Cellport.  ECF No. 325-2.

- During the hearing Cellport's counsel argued that because the reasonableness of the rates and hours had been stipulated, and because Cellport had been deemed the prevailing party, the Court should award 100% of all fees included in the parties' stipulation. After the Court indicated that it probably would not find a 100% award to be reasonable and pressed counsel for an alternative, counsel suggested that an award of two-thirds of the total amount might be reasonable. That would amount to approximately $1,667, 738.

- Peiker countered that it had prevailed on the two products that were by far the most important to both parties from an economic standpoint – the BMW SIAB and the BT-PSC. Those two products together accounted for the vast majority of the amounts sought by Cellport. Pressed by the Court for what it would consider a reasonable number, counsel suggested something in the $300,000 to $488,000 range.

## FINDINGS AND CONCLUSIONS

The License Agreement provides that the prevailing party is entitled to recover its reasonable attorney's fees. ECF No. 308-2 at 18, ¶10.3. As I reminded the parties in my order designating Cellport as the prevailing party, reasonableness is generally determined by applying the analysis and factors set forth originally in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714 (5th Cir. 1974],[1] and the Colorado Rules of Professional Conduct.[2]

---

[1] *Johnson* requires determination of the "lodestar" (reasonable rates times reasonable hours). It lists 12 factors or guidelines for courts to consider in determining reasonableness: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required; (4) preclusion of other employment; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney's; (10) the undesirability of the case; (11) the nature and relationship of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717-19.

[2] The Colorado Rules of Professional Conduct are found as an Appendix to Chapters 18 to 20, COLORADO COURT RULES – STATE (2015). These factors identified in Rule 1.5 are (1) time and labor required, (2) likelihood of preclusion of other employment, (3) fee customarily charged in the locality, (4) amount involved and results obtained, (5) time limitations imposed by the client or circumstances, (6)

I repeat now that Cellport was the prevailing party.  Cellport prevailed as to five of the seven disputed products.  It obtained a substantial money judgment, $2,346,926.  *See* Exhibit B to the parties' stipulation, ECF No. 325-2, last column.  It established its theory of the case – that resolution of the case was a matter of the interpretation and application of the Agreement, not infringement or non-infringement of its patents.  That affected royalties on three products (the two CKII/CIB's and the CKVI), and it accounts for $1,725,226 of the $2,346,926 in royalties and interest ultimately awarded.

Cellport's Chairman Pat Kennedy testified at the December 13, 2016 hearing that Cellport undertook this case to show licensees that Cellport would enforce its agreements.  According to him, the value of Cellport's victory on the contract interpretation issue was much greater than the monetary result.  He mentioned in that regard that Cellport has another important customer with which Cellport has a license agreement similar to the Peiker agreement.  In general I did not find Mr. Kennedy's testimony convincing.  I found his failure on cross-examination to recall details concerning Peiker's settlement offers to lack credibility, and I similarly found his effort to downplay the monetary consequences of the lawsuit to be self-serving and unconvincing.  However, I will assume that prevailing on the contract issue might have had some importance to Cellport independent of its monetary consequence.

Nevertheless, it is impossible to ignore the monetary results in determining what is reasonable.  The *Johnson* factors and the Colorado Rules of Professional Conduct both include the result obtained and the time required to obtain the result as factors that the Court should consider in determining reasonableness.  In that regard, I consider the following facts to be particularly significant:

nature and length of the professional relationship, (7) experience, reputation, and ability of the lawyer(s), and (8) whether the fee is fixed or contingent.

First, Peiker prevailed on the two products that were by far the most important in the monetary sense.  As the parties' chart shows, the BMW SIAB product, as to which Peiker prevailed in both this Court and on appeal, by itself accounted for $12,623,682 or approximately 64% of the total royalties and interest sought by Cellport.  *See* ECF No. 325-2 (second to last column).  The BT-PSC product, as to which Peiker prevailed in this Court both initially and after remand, accounts for $4,111,655 or approximately 21% of the royalties and interest sought.  *Id.* In contrast, the royalties and interest claimed by Cellport on the five products as to which it ultimately prevailed totaled $3,003,222 or approximately 15% of Cellport's total claim.  *Id.*  The royalties and interest ultimately awarded to Cellport on those five products was less than its claim, totaling $2,346,926.  *Id.* (last column).  This was only about 12% of the amount claimed on the seven disputed products.

I cannot say that the time spent by Cellport's attorneys (or Peiker's attorneys) on each of the seven disputed products was strictly proportional to the monetary significance of the products.  The only way to attempt such an allocation would be to study literally several hundred pages of billing records, and even then it is unlikely that it could be done.  Suffice it to say that neither party has attempted such an analysis of the records, nor has either party suggested that the Court should do so.  But it stands to reason that sophisticated businessmen and their sophisticated lawyers would devote more attention to the products that had by far the biggest economic impacts on their companies.  Counsel for Peiker put it bluntly at the hearing: If the BMW SIAB and the BT-PSC products had not been in dispute, the case would have been settled. Not only does that make sense, but one other fact in the case's history tends to support it.

That fact comes from the parties' unsuccessful mediation on May 25, 2011, but before turning to that I should explain why the Court here considers settlement offers.  Ordinarily such

offers are inadmissible under Rule 408 of the Federal Rules of Evidence.  However, Rule 408

"does not bar a court's consideration of settlement negotiations in its analysis of what constitutes

a reasonable fee in a particular case." *Lohman v. Duryea Burough,* 574 F.3d 163, 167 (3d Cir.

2009) (holding in in a civil rights case that "such evidence can be relevant when comparing what

a plaintiff 'requested' to what the plaintiff was ultimately 'awarded'"). *Cf. Marek v. Chesny,*

473 U.S. 1, 11 (1985) (holding that the losing defendants in a civil rights case were not liable for

the plaintiff's attorney's fees incurred after defendants' pretrial offer of settlement under Rule 68

where plaintiff recovered a judgment less than the offer).  In the present case plaintiff did not

make a Rule 68 offer of judgment.  However, in *Lohman* the court specifically rejected the

plaintiff's argument that defendants' failure to make an offer of judgment under Rule 68

precluded the district court from considering settlement negotiations in determining the degree of

the plaintiff's success.  574 F.3d at 168.  I agree.

        The evidence is that near the end of the mediation, during which various offers and

counteroffers were apparently exchanged, Peiker made a settlement offer of approximately the

same amount that Cellport ultimately recovered.  William Meyer, at the time the lead counsel for

Cellport, testified during the December 13, 2016 hearing that he thinks Peiker's last settlement

offer was $2.315 million, although he was not sure.  Peiker's counsel Timothy Getzoff testified

that Peiker's offer was $2.5 million, and that Cellport rejected that offer without a counter.  Mr.

Getzoff's recollection is more definite, but it makes little difference.  Cellport ultimately was

awarded $2,346,926 including damages and interest.  ECF No. 325-2.[3]  It took Cellport five

more years of litigation and attorney's fees to get back to what it had been offered.

---

[3] The interest calculation was through November 30, 2016.

In short, the two principal arguments on Peiker's side coalesce. The amount that we know Peiker was willing to pay in May 2011 was approximately the amount of damages and interest eventually awarded to Cellport on the five smaller products.

The parties have stipulated that the fees and costs incurred by Cellport for the period May 8, 2008 through May 31, 2011, which they label the "Pre-Mediation Period," was $1,211,194.19. They have stipulated to the "lodestar" for those services (reasonable hourly rates times reasonable time billed). That amount surely includes time spent on the two principal products as to which Cellport ultimately did not prevail. But I have no reasonable means of segregating that time. Moreover, much of that time was generic to the prosecution of the case regardless of the individual claims, such as pre-litigation discussions and planning, the preparation of the initial pleadings, preparation and service of discovery, and briefing the claim construction (Markman) issues, and various motions and court appearances. Importantly, this early block of time got the case and the parties to the settlement table, resulting in an opportunity for Cellport to achieve the monetary result that was ultimately achieved.

The remaining time and expense invested in the case by Cellport totals $1,290,413.60 ($2,501,607.79 minus $1,211,194.19). I find that this time and expense was largely unnecessary and unreasonable in view of the results obtained and the settlement offer that was made. As I have said, establishing Cellport's interpretation of the License Agreement might have had some value to Cellport independent of money, but given that I did not find Mr. Kennedy's testimony about its importance to be credible or convincing, I do not find that it justified putting Cellport and Peiker through five more years of expensive litigation. More significantly, Cellport would not have been able to seek an award of attorney's fees without "prevailing." By the same token, no evidence was presented that $2.5 million was Peiker's final offer. There was evidence that

Cellport did not counter that offer.  And, my award of 100% of the "Pre-Mediation Period" fees and costs was, if anything, generous.

Taking all these things into account, I will add 10% of the remaining time to the 100% award I am making for the time through May 31, 2011.  This is the maximum I can find to be reasonable.  That amounts to $129,041.36.  Accordingly, the Court finds and concludes that a total award of $1,340,235.55 is reasonable.

That figure is intended to be a complete, total and final award.  The additional 10% is meant to include fees, costs, and pre-judgment interest.  It is also meant to take into account that the figures submitted to the Court were as of November 30, 2016, and additional time (including preparation for and appearance at hearing) will have been incurred.  No further fees, costs or interest will be awarded.

## ORDER

The Court awards to Cellport Systems, Inc. and against Peiker Acustic GMBH & Co. fees, costs and interest in the total amount of $1,340,235.55.  A Second Amended Final Judgment will issue to include that award.

DATED this 20th day of December, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge